Gildersleeve *v.* The People.

---

SAME TERM. *Before the same Justices.*

## GILDERSLEEVE and ROBERTS *vs.* THE PEOPLE.

A recognizance to appear and answer to an indictment, need not recite the special facts which give the officer taking it authority to act in the particular case, or describe a criminal offense. It is sufficient if the officer had authority in cases of that general description, and the condition is to do something to which a party may be legally bound by recognizance.

The reason of this rule is, that the entering into a recognizance, being the

Gildersleeve *v.* The People.

voluntary act of the party, he admits the authority of the magistrate, and acknowledges the regularity of the proceedings in which it is taken. In this respect the case is distinguishable from one where the liability arises from a proceeding *in invitum.* *Per* EDWARDS, J.

A recognizance, the condition of which is, that the principal shall appear at the next court of general sessions of the peace, and then and there answer all such matters and things as shall be objected against him, and abide the order of the court, and not depart the said court without leave, and in the meantime shall keep the peace, &c., is valid, although it does not state what particular charge the principal shall answer.

The substance of the undertaking is, that the principal will appear and answer any charge which may be brought against him.

The legal effect of such a condition, in a recognizance is, that the principal shall appear at the next court of general sessions, and answer such charge as shall be brought against him, and be forthcoming before the court, at all times, until discharged; not merely that he shall appear at the term of the court held next after the date of the recognizance.

The statute of 1844, providing that all recognizances given in the city and county of New-York to answer a criminal charge, on being forfeited, shall be filed by the district attorney, together with a certified copy of the order of the court forfeiting the same, in the office of the county clerk, and docketed as if the same were the transcript of a judgment record for the penalty, and that such judgment shall be a lien on real estate, and may be collected by execution, is not in contravention of the section of the constitution of the year 1821, which declared that the trial by jury, in all cases in which it had been theretofore used, should remain inviolate forever.

The statute of 1844, so far as it operates upon recognizances taken previous to its passage, takes away no right, but operates merely in furtherance of the remedy. It furnishes a more summary method of enforcing an existing obligation.

ERROR to the court of common pleas of the city and county of New-York. The judgment in that court was rendered in favor of the people for $1000 of debt, against Gildersleeve and Roberts, upon a recognizance executed by the defendants on the 4th of February, 1843, to the people in the sum of $1000, pending an indictment against Gildersleeve for forgery. The condition of the recognizance was as follows: "That if the above named Richard Gildersleeve, shall personally appear at the next court of general sessions of the peace, to be holden in and for the city and county of New-York, and then and there answer all such matters and things as shall be objected against him,

Gildersleeve v. The People.

and abide the order of the court, and not depart the said court without leave, and in the meantime keep the peace towards the people of the state of New-York, and particularly towards John P. Duff for the term of three months, then this recognizance to be void," &c. On the 21st of February, 1845, the court of general sessions of the peace for the city and county of New-York, ordered this recognizance to be forfeited and to be filed, together with a certified copy of said order, in the office of the clerk of the city and county of New-York, and judgment to be entered thereon, according to law. And thereupon the recognizance, and a certified copy of the order forfeiting the same, were filed in the clerk's office, and judgment docketed, pursuant to the act of May 7th, 1844. (*Laws of* 1844, *p.* 475, § 8.) Upon the judgment thus rendered, the defendants brought a writ of error.

*N. B. Blunt*, for the plaintiffs in error. I. The judgment entered in the New-York common pleas, is void upon its face. (1.) The act of 1844, by virtue of which this judgment is created, is unconstitutional. (*Laws of* 1844, *p.* 475, § 8.) It deprives a defendant of the right of trial by jury. It deprives him of the opportunity of setting up any defense he may have, by pleading or otherwise. (*The People* v. *Bartlett*, 3 *Hill*, 570. *The People* v. *Green*, 5 *Id.* 647.) (2.) The recognizance upon which the judgment is bottomed, is void upon its face, for want of jurisdiction in the officer taking it. It does not describe the offense for which the indictment was afterwards found. (4 *Wend.* 387.) It describes no offense. (2 *R. S.* 1*st ed.* 691, 2, § 8. *The People* v. *Brown*, 23 *Wend.* 47. *The People* v. *Koeber*, 7 *Hill*, 39. *The People* v. *Young*, *Id.* 44. *The People* v. *Kane*, 4 *Denio*, 530.) At the utmost it is a mere recognizance to keep the peace. (3.) There is nothing in the record, to show a forfeiture or breach of the recognizance entered into, on the 4th of February, A. D. 1843. The recognizance was to answer "matters and things in general," and to keep the peace toward Ann Hulse in particular : and the indictment described in the order of forfeiture was for forgery in the second degree. For aught that appears, the indictment was for an offense committed

after the giving of this recognizance. The condition of the recognizance, was to appear at the March term, A. D. 1843, and there is nothing in the record to show a breach at that time, or a respiting over or continuance of the recognizance from that term to February A. D. 1845, (the term when the order was made,) which latter should have formed part of the order declaring the forfeiture. (*The People* v. *Hainer*, 1 *Denio R.* 454. *The People* v. *Crary & Fleming*, 17 *Wend.* 374. *The People* v. *Green*, 5 *Hill*, 647.) The proceedings of the New-York court of general sessions of February 21st, A. D. 1845, were without jurisdiction, and void. It does not appear that the defendant was called at the term named in the recognizance, or notice of a future requirement to appear, given to him or his bail. (4.) Under the act of 1844, every thing necessary to show breach and jurisdiction should be affirmatively set forth in the order forfeiting the recognizance. It is a summary proceeding, and every thing necessary to show jurisdiction must affirmatively appear. (*Miller* v. *Brinkerhoff*, 4 *Denio*, 118.) The order of forfeiture is in the nature of the declaration before the act of 1844, and should contain special averments of facts, showing jurisdiction to make the order. (*The People* v. *Hainer*, 1 *Denio*, 454. *Sackett* v. *Andross*, 5 *Hill*, 327. *The People* v. *Koeber*, 7 *Id.* 39.) (5.) The act of 1844 does not apply to a recognizance given in 1843.

II. The judgment docketed in the New-York common pleas, should be reversed with costs.

*John McKeon*, (district attorney,) for the people. I. The recognizance was taken in a case in which the officer taking it had authority. It is in proper form. It is not necessary to state all the facts and circumstances under which it was taken. (2 *R. S.* 704, §§ 4, 7. *People* v. *Kane*, 4 *Denio*, 544, 545. *People* v. *Blankman*, 17 *Wend.* 255.) II. By the terms of this recognizance, the bail was bound to have his principal in court to answer *any charge;* not merely that in which he was recognized to appear. (*Petersdorf on Bail*, 510. 10 *Wend.* 433. 17 *Id.* 374. 2 *Kelly*, 137. 8 *Ala.* 273.) III. An

order continuing the recognizance from Februaay, 1843, till February, 1845, can not be presumed not to be on file in the court below. If the court desire, they can issue a certiorari, *ad informandam conscientiam*, even after writ of error brought. (7 *Wend.* 478.) IV. Even if no order be filed, it is but an irregularity; and application should be made to the court below to set it aside. Mere irregularities are not ground of error. (*The People* v. *Blankman*, 17 *Wend.* 256. 21 *Id.* 19. 9 *Id.* 125. 2 *Cow.* 21. 4 *Id.* 533. *Laws of* 1845, *p.* 253.) V. The judgment is entered up under a statute of this state, authorizing summary proceedings. Nothing is required to be filed, but the order of the court of sessions. (*Laws of* 1844. *p.* 475, § 8.) VI. The act of 1844 is constitutional. At common law, a recognizance was an acknowledgment of a former debt upon record; it had the qualities of a judgment, and was binding and conclusive on the party. (4 *Denio*, 534, 536, 538. 2 *Black. Com.* 341. 2 *Tidd's Prac.* 1083, *Phil. ed.* 1840. 2 *Shep. Touch. by Preston*, 354.) Recognizances have been authorized for various purposes; one of which was, to secure payment of money by one person to another. This was allowed by common law, and by statute of *Hen.* 8, *ch.* 6. Recognizances taken under statute merchant and statute staple were securities for debts acknowledged to be due, and bound lands. (2 *Black. Com.* 160. *Bac. Abr. Execution, B. Com. Dig. Obligation, A. Statute Staple, B. Coote's Law of Mort.* 76, 82. 2 *Tidd*, 1093, 6. *Hall* v. *Winchfeld, Hob.* 195. *Edgecomb* v. *Doe, Vaughan*, 102, 3. *Fanshaw* v. *Morrison*, 2 *Ld. Raymond*, 1138.) The sureties in these cases have no reason to complain. They knew the law before they made the engagement, and are bound by their own contract. Summary proceedings, of a similar nature, sustained in U. S. courts, and in several states. (1 *Blackf. Rep.* 204. 5 *How. Mississippi Rep.* 434. 4 *Bibb.* 531. *Laws of U. S. Statutes at Large, vol.* 3, *p.* 593, § 2. 4 *Wheat. Rep.* 235.) Prior to the constitution of 1821, recognizances could be forfeited in this summary manner. The law of 1844 is similar to that in Greenleaf's Laws. (*Laws of New-York*, 1 *Greenleaf*, 299, § 5.

*Id.* 408, § 4.) VII. All the difficulties which may be presented as to the evil consequences of such summary proceedings, are answered by the power given to common pleas of the city of New-York, as a court of exchequer, to control these judgments, and " do as in justice they should." (*Laws of* 1845, *p.* 250.)

*By the Court,* EDWARDS, J. The first ground of error alledged by the plaintiffs is, that the recognizance upon which the judgment below was founded, describes no offense, and is defective on its face.

In the case of *The People* v. *Koeber,* (7 *Hill,* 39) and of *The People* v. *Young,* (7 *Id.* 44,) it was held by the supreme court, that the recognizance should so far state the crime charged, as to show the case to be one over which the officer taking it had jurisdiction. But, subsequently, in *The People* v. *Kane,* (4 *Denio,* 530,) it was held by the same court, that a recognizance need not recite the special facts which gave the officer jurisdiction ; and that it is enough if he had jurisdiction in cases of that description ; and it appears that the condition is to do something to which a party may be legally bound by recognizance ; and the cases above cited were, in this respect, overruled. In the case of *Champlin* v. *The People,* (2 *Comst.* 82,) the rule laid down in *The People* v. *Kane,* was adopted by the court of appeals, and is now the settled law of this state. The reason of the rule is, that the entering into the recognizance, being the voluntary act of the party, he admits the authority of the magistrate, and acknowledges the regularity of the proceedings in which it is taken ; and in this respect the case is distinguishable from one where the liability arises from a proceeding *in invitum.*

The next objection which is taken to the validity of the recognizance is, that the parties to it merely bind themselves that the principal shall keep the peace. But such is not the fact. On the contrary, the condition of the recognizance is that Gildersleeve, the principal, shall appear at the next court of general sessions of the peace, to be holden in and for the city and county of New-York, and then and there answer all such matters and

Gildersleeve *v.* The People.

things as shall be objected against him, and abide the order of the court, and not depart the said court without leave, and, in the mean time, shall keep the peace, &c.

Again; it is contended that the recognizance is defective in not stating what particular charge the principal shall answer. The substance of the undertaking is that the principal will appear and answer any charge which may be brought against him. The parties entered into the recognizance voluntarily, and they have no right to complain that the condition is too general. It has been held that where the parties are bound that the principal shall appear and answer a particular information, when it is also a part of the condition, as in this case, that the principal shall not depart the court without leave, and afterwards the attorney general enters a *nolle prosequi* as to that information, and exhibits another upon which the defendant is convicted, and he refuses to appear in court after personal notice, the recognizance is forfeited. (*Hawk. P. C. b.* 2, *ch.* 15, § 84. *Queen* v. *Ridpath,* 10 *Mod.* 152.) If then an obligation to answer a particular charge, when accompanied with the further condition that the principal shall not depart without leave, implies a liability to answer any other charge, it certainly can not be pretended that it is a defect in the recognizance that it states in express terms what the law would imply without them.

The next question which arises is as to the legal effect of the recognizance. It appears to have been taken on the 4th day of February, 1843; and the order of forfeiture was made on the 21st day of February, 1845. The plaintiffs in error contend that the principal in the recognizance was only bound to appear at the term of the court of general sessions which was held next after it was taken. But such has not been the practical construction of a recognizance like the one now in question, and such, as we think, is not its legal effect. A recognizance is a substitute for the custody of the party ; and bail are substituted for the officer whose duty it is to take charge of the party accused. Thus it is laid down by elementary writers that a man's bail are jailers of his own choosing, who are bound to secure his appearance as effectually, and to put him as much under the

Gildersleeve *v.* The People.

power of the court, as if he had been in the custody of the proper
officer. If he be in the custody of the proper officer, he can not
be set at liberty, unless discharged by the court; and, until
then, he is bound to answer any charge which is brought against
him. And if bail are to be regarded as standing in the same
situation as the officer out of whose custody they have taken the
accused party, it would seem that they also should have him
ready to answer at all times until duly discharged by the court.
It is well known that in the city of New-York a great number
of cases are continued from one term of the general sessions
to another, owing to the absence of witnesses, the increase
of crime, and other unavoidable causes. The form of recogni-
zance which has been used has always been substantially the
same as the one in question; postponements have taken place
from term to term; and it has never been supposed that the
condition of the recognizance was answered by an appearance
merely at the next term of the court after the recognizance was
taken. If such a construction were given to the recognizance, it
would be necessary in every case where the party could not be
tried, either that he should be taken into custody, or a new re-
cognizance taken. It seems to me that the legal effect of the
condition of the recognizance in question is that the principal
shall appear at the then next court of general sessions, and an-
swer such charge as shall be brought against him, and be forth-
coming before the court at all times until discharged. And such
a construction I think has been sanctioned by the adjudications
of this state. (*The People* v. *Stager,* 10 *Wend.* 431. *Cham-
plin* v. *The People, ubi sup.*) If I am correct in this view of
the case, there was no necessity of any formal continuances from
term to term, and the order of forfeiture was regular.

The next ground taken by the plaintiffs in error is, that the
statute under which the judgment in this case was entered up, is
in contravention of the constitution of the year 1821, which de-
clared that the trial by jury in all cases in which it had been
theretofore used, should remain inviolate forever. (*Const.* 1821,
*art.* 7, § 2.)

A recognizance is an acknowledgment of a debt, and when filed

in a court of record is a matter of record. At common law it bound the lands of the conusor, and an execution might be issued upon it as upon a judgment. (*Toml. L. Dic. tit. Recognizance.* 2 *Saund.* 68, *a* 1, 70, *d* 3.   *The People* v. *Van Eps,* 4 *Wend.* 387.   *The People* v. *Kane,* 4 *Denio,* 530.)   Before the year 1818 a recognizance, when forfeited, was sent by the court in which it was taken to the court of exchequer, which was authorized to enforce it by execution. (*Laws of* 1813, *p.* 401, §§ 1, 6, 9.)   In the year 1818 the courts of common pleas of the several counties of this state were vested with the like powers relative to the collection of forfeited recognizances, as had been before that time vested in the court of exchequer. (*Laws of* 1818, *p.* 307, § 8.)   It was not necessary to bring an action upon the recognizance, because there was nothing to be tried. The recognizance was an acknowledgment of record that a debt was due, and was in its legal effect a confession of judgment.

About the year 1830 an action of debt was for the first time brought in the supreme court of this state founded on a recognizance. The reason why this course was pursued was, that when the powers of the court of exchequer, which was a branch of the supreme court, were transferred to the several courts of common pleas, an execution issued by one of those courts could not be sent out of the county. And it was finally provided by statute that when any recognizance to the people of this state should become forfeited, the district attorney should prosecute it by action of debt for the penalty. (2 *R. S.* 485, § 29.)

In the year 1844, the statute under which the judgment in this case was entered up was passed. (*Laws of* 1844, *p.* 475, § 8.)   That statute, which applies only to the city and county of New-York, provides that all recognizances given to answer a charge preferred in a court of criminal jurisdiction, on being forfeited, shall be filed by the district attorney, together with a certified copy of the order of the court forfeiting the same, in the office of the clerk of said city and county, and that thereupon the clerk shall docket the same in the book kept by him for docketing judgments, transcripts whereof are filed with him as such clerk, as if the same were the transcript of a judgment record

for the penalty ; and it is further provided that such judgment shall be a lien on real estate, and that it may be collected by execution.

It will be seen that this is substantially the re-establishment of the rule which existed at common law, and under the former statutes of this state, and which existed at the time the constitution of 1821 was adopted, under which the statute in question was passed.

It was said upon the argument that this statute deprives a party of the opportunity of setting up any matter which might be alledged in discharge of his liability. But we do not think that such will be its practical effect. Under the common law rule it frequently occurred that there were matters which had arisen subsequent to the entering into the recognizance, which in equity and justice entitled the conusor to a discharge, and a writ of *audita querela* was resorted to for that purpose. But afterwards, as a more convenient method, the courts were in the habit of granting summary relief upon notice. (*Toml. L. Dic.* 131, *tit. Audita Querela.*) And it was expressly provided by the laws of this state that the court of exchequer might discharge a recognizance after forfeiture, when justice and equity required it. (*Laws of* 1813, *p.* 401, § 1.) The same power was conferred upon the courts of common pleas of the respective counties when they were substituted in the place of the court of exchequer. (*Laws of* 1818, *p.* 307, § 8.) It is said, however, that no such power is conferred upon any court by the law of 1844. If the judgment entered up under that act is a judgment of the court of common pleas, there is no doubt that by the rules of the common law that court would have the power to give relief on motion. The legislature have not expressly declared that such a judgment shall be a judgment of the court of common pleas, although it would seem that such was their intention ; for, after requiring the judgment to be docketed with the county clerk, they provide that an execution may be issued to collect the amount of the recognizance, in the same form as upon a judgment recovered in the court of common pleas. And it would seem that the plaintiffs in error so construed the law, for the writ of error is directed

to the judges of the court of common pleas, and the return is made by them.  Besides, the revised statutes contain a general provision that upon the application of any person whose recognizance shall have become forfeited, or of his surety, the court of common pleas of the county in which such recognizance was taken, may discharge the same upon such terms as to such court shall appear just and equitable.  (2 *R. S.* 486, § 37.)  But even if that court did not possess the power to interfere, there can be no doubt that in a proper case a court of equity would give relief.

Again, it is contended on the part of the plaintiffs in error, that if the recognizance in this case is to be governed by the act of 1844, which was passed after it was taken, the character of the liability assumed by the plaintiff will be changed.  The question then arises, what was the nature of the plaintiff's liability at the time the recognizance was entered into ?

It appears by reference to the recognizance, that the conusors acknowledged a debt to be due, which should be levied of their goods and chattels.  It was taken before one of the special justices for preserving the peace in the city of New-York, and when returned and filed it became an acknowledgment of an indebtedness of record, and like other records it imported absolute verity.  (*People* v. *Kane,* 4 *Denio,* 530.)  At that time it was not a lien upon lands, and an execution could not be issued without a suit; but in such suit it was not necessary to alledge or prove any damage by reason of the breach of the condition.  The only thing necessary to be alledged and proved is the breach.  (2 *R. S.* 485, § 29.)  If, however, the judgment should be entered up under the provisions of the act of 1844, the order of the court before which the breach would occur, and of which the court itself would have conclusive evidence, would be regarded as sufficient proof of the breach, without the additional formality of the commencement of a suit, and a repetition of the same proof.  It is true that in the former case the party would have an opportunity to set up any matter which would operate as a discharge ; but in the latter case he could do the same thing though in a different manner.  The extent and character of the liability would be the same in both cases, but the proceedings would be

more summary in one case than in the other. The statute of 1844 takes away no right, but operates merely in furtherance of the remedy—it furnishes a more summary method of enforcing an existing obligation. (*See* 1 *Kent,* 555.)

The judgment of the court below must be affirmed.

———————•◦•———————

SAME TERM.   *Before the same Justices.*